CANTON STATE BANK, Plaintiff-Appellee, *v.* ILLINOIS HUMAN RIGHTS COMMISSION *et al.*, Defendants-Appellants.

Third District   No. 3—83—0457

Opinion filed April 12, 1984.

Neil F. Hartigan, Attorney General, of Springfield (Susan C. Weidel and Georgene M. Wilson, Assistant Attorneys General, of counsel), for appellants.

Thomas G. Harvel and Homer W. Keller, both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

In September and October, 1978, five female employees of the Canton State Bank filed charges with the Fair Employment Practice Commission (FEPC or Commission) against their employer claiming that the bank discriminated on the basis of sex by paying a higher salary to a male employee for performing the same duties. The Commission filed a complaint against the bank on March 5, 1979. The administrative law judge who presided over the hearing decided that the bank was engaging in sex discrimination. The bank appealed and the Commission upheld the decision of the administration law judge. On further review the circuit court of Fulton County reversed the Commission's decision, finding among other things that the administrative law judge's decision that the bank did not not have a management-training program was against the manifest weight of the evidence. We agree.

The complainants base their claim on the fact that a male employee, Thomas Wheeler, was paid more than themselves for performing substantially the same work. Thomas Wheeler, the alleged management trainee, began working for the bank in 1974 as a part-time employee. Before graduating from college after having second thoughts about pursuing his planned teaching career, Wheeler discussed permanent employment at the bank with Otto Stephenitch, the bank president, after graduating from college as an alternative to teaching. In March 1977 Wheeler began working at the bank. He started in the bookkeeping department, and in July 1977 he replaced

the department supervisor for two weeks while she was on vacation. Shortly afterward in the same month Wheeler moved to the main floor and then to the drive-in-window to train as a teller. He replaced both the drive-in supervisor and the main floor supervisors when they went on vacation. Of the five complainants only one was a supervisor of Wheeler, and Wheeler was making more than any of them while he was working in the departments in which they worked.

■ Before discussing our reasons for deciding that the administrative law judge's decision was against the manifest weight of the evidence, we will briefly discuss the bank's claim that the administrative law judge improperly decided this case as an "equal pay" claim rather than as a sex-discrimination case. The bank reasons that the FEPC had no authority to decide a wage-discrimination claim because the sole remedy for such claims is the female employment act (Ill. Rev. Stat. 1979, ch. 48, par. 4(a)). The female employment act makes it a misdemeanor to discriminate against women in payment of wages and imposes a substantial fine. The bank's argument would preclude a civil action based upon wage discrimination in Illinois. Although there is no case law deciding this issue, the "Guidelines on Discrimination in Employment" promulgated by the FEPC suggest that such a cause of action is within the scope of the FEPA. The Guidelines considered it a violation "for an employer *** to differentiate between men and women performing the same or substantially similar work in fixing the wages, benefits and compensation to be made to such employees." See *City of Chicago v. Illinois Fair Employment Practices Com.* (1980), 87 Ill. App. 3d 597, 601, 410 N.E.2d 136.) We find that wages are a "term or condition of employment" and, therefore, one type of discrimination covered by the Act. The administrative law judge properly considered this a wage-discrimination case.

■ In so holding we do not find that we must reach a different decision than did the trial judge, because we also find that the administrative law judge's decision was against the manifest weight of the evidence. We have considered the evidence in the record and find that, although no formal management training plan had been adopted by the bank and the departments in which Wheeler worked stated they were never informed that Wheeler was a management trainee, the evidence overwhelmingly supports the proposition that Wheeler was hired to perform a different job than the complainants. No other employee at the bank temporarily assumed a supervisory position in a department in which they had worked for only three months when other employees in that department knew far more about that area of the Bank. In *Shultz v. First Victoria National Bank* (5th Cir. 1969),

420 F.2d 648, the circuit court of appeals reviewed a bank's alleged management training program to decide whether such plan qualified as an exception to the provision of the Equal Pay Act which requires that employees be paid equally for performing the same tasks. Although the court in *Schultz* found that the bank did not have a *bona fide* training program, it based its decision largely upon the fact that the "trainees" moved through departments of the bank just as any other employee would to work his/her way up through the ranks. The court described the rotation of the trainees as "unpredictable, sporadic, and unplanned" (420 F.2d 648, 655), and their rotation was largely based upon the bank's personnel needs. In contrast to the situation described in *Shultz*, Wheeler was moved regularly from department to department. As of the time these charges were filed, only slightly more than a year after Wheeler had begun working full time at the bank, he had worked in three departments of the bank and had substituted for all three department supervisors when they were on vacation. None of the complainants had moved more than once to a different department, and all of the complainants had worked at the bank at least three years prior to this proceeding. Also, none of them had a college degree. We find no support in the record for the administrative law judge's finding that the training program was an afterthought by the bank adopted to avoid this sex-discrimination charge. We, therefore, agree with the circuit court that the administrative law judge's finding that a management-training program did not exist at the bank is contrary to the manifest weight of the evidence.

This finding is dispositive of the wage-discrimination claim, because without any male employees performing substantially the same work as the female claimants no discrimination based upon sex occurred. The decision of the circuit court of Fulton County is therefore affirmed.

Affirmed.

HEIPLE and BARRY, JJ., concur.